**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
**MICHELLE KERIN**, OSB No. 965278
michelle@angelilaw.com
**AMY E. POTTER**, OSB No. 231794
amy@angelilaw.com
**AMANDA A. THIBEAULT**, OSB No. 132913
amanda@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*Attorneys for Defendant Samuel Troy Landis*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF OREGON<br><br>vs.<br><br>SAMUEL TROY LANDIS<br><br>Defendant. | Case No. 6:23-cr-00330-MC<br><br>**REPLY IN SUPPORT OF REMOVAL OF STATE CRIMINAL PROSECUTION PURSUANT TO 28 U.S.C. § 1442(a)(1)** |

Defendant Samuel Troy Landis, a Special Agent for the United States Drug Enforcement Administration, was involved in an accident while actively surveilling a dangerous fentanyl supplier. He was charged by the State with criminally negligent homicide. Because he was acting within the scope of his official duties and his actions were necessary and proper, he is entitled to have his case tried in federal court.

The State opposes and argues that there is no federal defense available and no federal interest to be served in this case. This is based on the State's conclusion that there was no

PAGE 1 – REPLY IN SUPPORT OF REMOVAL OF STATE COURT PROSECUTION

exigency at the time of the accident. But that argument misses the mark. Removal requires only a showing that SA Landis's actions occurred while he was acting under color of office and that he intends to assert a plausible federal defense. There is sufficient evidence of both in this case. This Court should grant removal.

## ARGUMENT

When an officer of the United States is charged with a state crime, he is entitled to have the case removed to federal court if the charges are "for or relating to any act under color of such office." 28 U.S.C. §1442(a). To meet this standard, SA Landis must show by a preponderance of the evidence that (1) he is an officer within the meaning of the statute, (2) "a causal nexus exists" between the State's charges and his actions, and (3) he has a "'colorable'" federal defense to the State's charges. *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir.2006)). In the notice of removal, SA Landis alleged facts supporting each requirement, and in this reply, he offers additional support for removal.[1]

The State challenges SA Landis's allegations, arguing that there is neither a nexus between SA Landis's actions and his job nor a colorable defense to the crime charged. *See* State Response at 6 (arguing that SA Landis is being prosecuted for his driving, not doing his job). But

---

[1] The removal statute contemplates an evidentiary hearing when removal is disputed. 28 U.S.C. § 1446(c)(5). But that hearing may be waived if no facts are in dispute. *See, e.g.*, *Wyoming v. Livingston*, 443 F.3d 1211, 1225 n.8 (10th Cir. 2006) ("It is well settled that parties may stipulate to a waiver of the evidentiary hearing, which would not be permitted if holding the hearing were a jurisdictional requirement.") And it is not necessary to present witness testimony to support removal; affidavits and other evidence may be used to support removal. *See, e.g., Leite*, 749 F.3d at 1123-24 (describing affidavits used to support removal). Here, SA Landis is offering three exhibits in support of removal for the Court's consideration. All the exhibits were provided by the State in discovery and include the sworn grand jury testimony of SA Landis, other officers involved in the surveillance, and State's the investigative officers.

PAGE 2 – REPLY IN SUPPORT OF REMOVAL OF STATE COURT PROSECUTION

the State's own evidence—including the testimony before the grand jury—makes clear that SA Landis has established a casual nexus and a colorable federal defense by a preponderance. *Id.* at 1122 (citation omitted).

Specifically, the evidence establishes that (1) SA Landis was a DEA agent at the time of the accident; (2) he was engaged in surveillance; (3) he made a decision in an effort to maintain surveillance that resulted in the accident; and (4) he asserts that he is immune from prosecution based on the Supremacy Clause. At this stage, that is sufficient to support removal. *Id.* at 1124 (noting that a defendant need not prove the defense is meritorious in order to support removal). This Court should grant removal.

**1. SA Landis is a Federal Officer.**

As to the first prong of the test, the State does not dispute that SA Landis was (and is) a federal officer; he was and is employed as a Special Agent with the Drug Enforcement Administration in Salem, Oregon. Nor does the State dispute that he was on-duty, engaged in his official duties driving a DEA vehicle and subject to DEA Policies on the day the accident occurred.[2]

The evidence on these points is clear. *See* DEA Operation Plan for March 28, 2023, Operation, at p. 4, attached hereto as Def. Ex. 1 (listing Samuel T. Landis as one of the assigned personnel and denoting he is with DEA); DEA Polices and Procedures for Use of Government Vehicles, attached hereto as Def. Ex. 2; GJ Testimony of SA Landis, attached hereto as Def. Ex.

---

[2] The test for official duties is simple: was he engaged in his official duties as opposed to "'a personal frolic or detour?'" *Hawaii v. Broughton*, No. CR. 13-00415 HG, 2013 WL 3288381, at *4 (D. Haw. June 28, 2013) (quoting *United States v. Schweitzer*, 35 Fed. Appx. 331, 332 (9th Cir. 2002)). There is no suggestion that SA Landis was engaged in personal business at the time of the accident.

PAGE 3 – REPLY IN SUPPORT OF REMOVAL OF STATE COURT PROSECUTION

3, at 105-07 (SA Landis testifying regarding his status as a Special Agent with the DEA and his role on March 28); *see also id.* at 11 (GJ testimony of Det. Phelps (the investigating detective) describing SA Landis as with DEA and actively engaged in surveillance when crash occurred). The first prong of the removal test is satisfied.

   **2.   SA Landis Was Operating "Under Color of Office."**

SA Landis was also clearly operating "under color of office" when the accident occurred. To demonstrate this, SA Landis need only show "a nexus, a 'casual connection' between the charged conduct and the asserted official authority." *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999) (citation omitted). To do this, SA Landis must offer evidence that he was engaged in his official duties as opposed to "'a personal frolic or detour'" when the accident occurred. *Hawaii v. Broughton*, No. CR. 13-00415 HG, 2013 WL 3288381, at *4 (D. Haw. June 28, 2013) (quoting *United States v. Schweitzer*, 35 Fed. Appx. 331, 332 (9th Cir.2002)) (concluding officer that was commuting to work in marked vehicle was engaged in official duties when he confronted motorist). And he must offer evidence that the charge is causally connected to those duties. *Acker*, 527 U.S. at 431. The evidence is sufficient on both counts.

SA Landis—and other officers engaged in surveillance on March 28, 2023—testified before the grand jury that they were engaged in surveillance of a fentanyl supplier. *See, e.g.,* Def. Ex. 3 at 11, 109-10. When the accident happened, SA Landis was "driving with a purpose" to keep up with the surveillance, which can be difficult when the person being surveilled expects law enforcement to be following them *Id.* at 109-10. And it can be dangerous if the surveilling officers are detected by the subject. *See id.* at 38-39. SA Landis approached the stop sign, slowing down and applying the brakes, assessed the situation, and continued forward to maintain his position. *Id.* at 110-14. It was at this point that the accident occurred.

PAGE 4 – REPLY IN SUPPORT OF REMOVAL OF STATE COURT PROSECUTION

The State's contention that there is "no meaningful connection between defendant's federal duties" and the accident (State Resp. at 6) is difficult even to understand. SA Landis was conducting surveillance to identify the subject and gather information[3] in an operation that posed risks to the agents and officers involved because of the nature of the criminal activity, the individuals targeted, and the important work the agents were performing.[4] The fact that the accident may have occurred because SA Landis violated Oregon's traffic laws does not change that.

Multiple law enforcement officers testified in grand jury that it is sometimes necessary during surveillance to violate traffic laws to maintain contact with the subject and perform their law enforcement duties. *See, e.g.,* Def. Ex. 3 at 38-39, 62, 67-68, 72. A surveilling officer is "try[ing] to stay in play" because that officer never knows when they might be required to pick up the suspect. *Id*. at 18, 30. "[D]epending on traffic patterns and flow of traffic and the number of officers that you have" there may be a reason to go above the speed limit. *Id.* at 38; *see also id.* at 72 (noting a "lot of times" when agents may need to speed due to nature of law enforcement activity). In some instances, breaking traffic laws is necessary for law enforcement to do their job; the failure to do so would render them "ineffective." *Id.* at 51; *see also id*. at 62

---

[3] *See, e.g.,* Def. Ex. 3 at 37-39 (GJ testimony of Sgt. Dawson).

[4] *See* Def. Ex. 3 at 37-38 (GJ testimony of Sgt. Dawson) ("I look at the dealing of fentanyl as an urgent investigation. It's killing people on a daily basis."); *id*. at 80 ("the majority of drug trafficking organizations usually are armed with weapons. So detection for us is really important; to be concealed and not be seen."); *see also id.* at 61(GJ testimony of SA Hoagland) ("I would say [there was urgency based on] the amount of fentanyl, powder, and pills and other narcotics the courier was carrying at the time. Was most likely carrying at the time."); *id.* at 72-73 (GJ testimony of Det. McCarly) (responding to a question about risks in this surveillance and explaining "we don't want them to be aware of us because that could potentially be some threats and things like that personally to us."); *id.* at 84-85 (GJ testimony of SA Thomas) (describing basic level of urgency involved in surveillance because you need to stay with team).

PAGE 5 – REPLY IN SUPPORT OF REMOVAL OF STATE COURT PROSECUTION

(noting a reason to speed). And here, surveillance was particularly challenging because the target was driving erratically. *See id.* at 62.[5]

DEA policy specifically permits its Special Agents to violate traffic laws, relying on their best judgment in these situations. *See* Def. Ex. 2 (permitting agents "in enforcement . . . situations" to violate traffic laws while prioritizing public safety). And law enforcement receives training that teaches them how to drive "within their ability" to allow them to make these types of decisions. *See, e.g.*, Def. Ex. 3 at 46-47, 50-51, 61, 69.

SA Landis was preparing to pick up the suspect vehicle, if necessary, when he went through the intersection. According to the investigating Detective, "his plan was to go straight through the intersection. And then take a right onto Church to go south. And then take a left to go east onto Mission to kind of join with—where the direction the target was going." *Id.* at 18-19. The fact that a tragic accident occurred does not change the fact that SA Landis was operating under color of office with that accident occurred.

The State cannot defeat removal by simply characterizing the accident as "grossly negligent" and arguing that the violation of the traffic laws was not supported by an exigency. *See Texas v. Kleinert*, 855 F.3d 305, 312 (5th Cir. 2017) (holding that the State's "allegations do not control the causal connection analysis"). The underlying merits of the charges against SA Landis are "irrelevant to whether [SA Landis] acted under the color of federal authority for removal purposes." *Georgia v. Heinze*, 637 F. Supp. 3d 1316, 1324 (N.D. Ga. 2022).

---

[5] In suggesting that SA Landis was "grossly negligent" while performing surveillance, the State also fails to acknowledge that a dangerous, overgrown hedge—which was apparently widely known to people familiar with the neighborhood—created a hazard that a stranger to the area (like SA Landis) would not be aware of and the hill for the bicyclist was very steep. *See, e.g.*, Def. Ex. 3 at 16-17, 35, 80-81.

PAGE 6 – REPLY IN SUPPORT OF REMOVAL OF STATE COURT PROSECUTION

To determine whether a casual nexus exists, this Court must "credit" SA Landis's theory of the case. *Leite*, 749 F.3d at 1124. SA Landis has asserted that the actions he took at the intersection were performed as part of his job as a DEA agent and consistent with DEA policy. Those assertions are consistent with the evidence, including the testimony the State presented to the grand jury. The decisions SA Landis made on the scene are precisely the types of decisions DEA agents are permitted to make—indeed, that they *must* make—as federal agents. *Cf. City of Norfolk v. McFarland*, 143 F. Supp. 587 (E.D. Va. 1956) (removal required where investigator was hustling to pick up fellow officer before conducting raid).

The ultimate question of whether SA Landis's actions were within the scope of his official duties "'is one for the federal—not state—courts to answer.'" *Id.* (citation omitted); *see also Kleinert*, 855 F.3d at 312 (holding that a defendant "is not required to definitively 'exclude the possibility that the suit is based on acts or conduct not justified by his federal duty' before removal." *Id.* (quoting *Acker*, 527 U.S. at 429 (alterations omitted)). The second prong for removal is satisfied.

### 3. SA Landis Has a Colorable Federal Defense.

Finally, SA Landis has proffered that he intends to assert a defense of immunity pursuant to the Supremacy Clause because "he reasonably believed that his actions were necessary and proper in the performance of his duties." *Broughton*, 2013 WL 3288381, at *5 (citation omitted). By raising this defense, SA Landis has established a basis for removal. *Id.; see also Wyoming v. Livingston*, 443 F.3d 1211, 1224 (10th Cir. 2006) ("Removal is appropriate, for example, where the federal officer alleges Supremacy Clause immunity as a defense."); *Kleinert*, 855 F.3d at 313 ("Because Kleinert plausibly alleged that he was acting as a federal officer at the time of the shooting, he sufficiently asserted a colorable federal defense."); *Heinze*, 637 F. Supp. 3d at 1325

(N.D. Ga. 2022) ("The Defendants have alleged that they were acting as federal officers in accordance with federal law and therefore entitled to immunity. That is all that is required."); *New York v. Tanella,* 239 F. Supp. 2d 291, 296 (E.D.N.Y. 2003) (finding colorable federal defense where the defendant "assert[ed] that he is immune from prosecution under the Supremacy Clause of the Constitution for acts that he reasonably believed were necessary and proper in the performance of his duties").

But even if simply raising the defense is not sufficient to secure removal, SA Landis's testimony—along with the testimony of the other officers—establishes by a preponderance of the evidence that this defense is colorable. *See Leite,* 749 F.3d at 1124. SA Landis has said that at the time of the accident, he was attempting to stay with his team. *See* Def. Ex. 3 at 109-10, 112-14.[6] And the other officers testified that it is sometimes necessary to violate traffic laws to conduct effective surveillance. *See, e.g.,* Def. Ex. 3 at 38-39, 62, 67-68, 72. SA Landis has presented sufficient facts to create a colorable argument that his actions were necessary and proper.

The fact that SA Landis violated a state traffic law does not defeat his defense, much less render his defense not colorable. "Supremacy Clause immunity does not require that federal law explicitly authorize a violation of state law." *Livingston*, 443 F.3d at 1227 (10th Cir. 2006).

Nor, as the State contends, is he required to establish exigency; what he has presented is sufficient. SA Landis and other officers were engaged in a law enforcement operation that involved surveilling a dangerous suspect. And DEA policy authorized violation of traffic laws during these types of surveillance activities. *See* Def. Ex. 2.

---

[6] In fact, the State *concedes* that SA Landis *believed* he was acting reasonably, and disputes only whether he was *in fact* acting reasonably. State Response at 2. That there may be a dispute about the merits of the defense is not sufficient to defeat removal. *Cf. Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (holding that a defendant seeking removal "need not win his case before he can have it removed").

What SA Landis needs to show, at this stage, is that there is a colorable argument that he believed his actions were reasonably necessary. *California v. Dotson*, No. 12-cr-0917-AJB, 2012 WL 1904467, at *4 (S.D. Cal. May 25, 2012) (concluding (in the context of a motion to dismiss) that "[u]nder the necessary and proper standard, the Defendant only has to show that his act of speeding and running the stop sign in order to catch up to the suspect and his fellow agents was something he reasonably thought was necessary in performance of his duty"). He has done that.

This was not a traffic accident that occurred during normal day-to-day driving. *Cf. State v. Ivory,* 906 F.3d 999, 1001-02 (4th Cir. 1990) (denying removal when defendant, who was driving a military convoy, violated traffic laws, and failed to offer anything "in the conduct of his federal responsibilities that justified his violations of these laws"). Nor is there any evidence of malice or criminal intent. *See Dotson*, 2012 WL 1904467, at *4 (discussing the "only handful" of cases where federal courts have denied immunity to federal officers charged with state crimes and noting most involved allegations of malice or criminal intent). This was a tragedy that occurred when SA Landis was conducting surveillance, and he intends to argue that he is immune from prosecution in state court.

SA Landis is entitled to have his defense heard in federal court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (holding that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court"); *cf. Dotson*, 2012 WL 1904467, at *4 (concluding (in the context of a motion to dismiss) that "[u]nder the necessary and proper standard, the Defendant only has to show that his act of speeding and running the stop sign in order to catch up to the suspect and his fellow agents was something he reasonably thought was necessary in performance of his duty"). He has met the final prong for removal.

///

PAGE 9 – REPLY IN SUPPORT OF REMOVAL OF STATE COURT PROSECUTION

## CONCLUSION

SA Landis has clearly established grounds for removal; he was a federal officer engaged in his job when the accident occurred, and he seeks to have this case heard in federal court. "Section 1442 is interpreted broadly in favor of removal where, as here, a federal officer is seeking a federal forum." *Broughton*, 2013 WL 3288381, at *2 (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006)). This Court should grant removal.

DATED this 22nd day of November 2023.

    Respectfully submitted,

    *s/ Amy E. Potter*
    **ANGELI LAW GROUP LLC**
    DAVID H. ANGELI, OSB No. 020244
    MICHELLE KERIN, OSB No. 965278
    AMY E. POTTER, OSB No. 231794
    AMANDA A. THIBEAULT, OSB No. 132913
    *Attorneys for Defendant Samuel Troy Landis*