PAIGE E. CLARKSON
District Attorney for Marion County, Oregon
DAVID R. WILSON, OSB No. 075610
Deputy District Attorney
JESSICA B. SPOONER, OSB No. 105919
Deputy District Attorney
Marion County District Attorney's Office
P.O. Box 14500
Salem, OR 97309
Telephone: (503) 588-5222
Email: drwilson@co.marion.or.us
       jspooner@co.marion.or.us
Attorneys for the State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF OREGON<br><br>vs.<br><br>SAMUEL TROY LANDIS,<br><br>               Defendant. | Case No. 6:23-CR-00330-MC<br><br>STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS |

      The State of Oregon hereby responds to Defendant's Motion to Dismiss Pursuant to Federal Rule of Criminal Procedure 12(b) (hereinafter referred to as "Defendant's Motion to Dismiss"), Electronic Court Docket ("ECD") No. 37, as follows.

Page 1 – STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

PAIGE E. CLARKSON
District Attorney for Marion County, Oregon
555 Court Street NE, Suite 3250
P.O. BOX 14500
SALEM, OR 97309

# INTRODUCTION

This court must decide whether it was objectively reasonable for a federal agent to run a stop sign at an intersection where he could not have seen oncoming traffic, while driving in an unfamiliar location, during a non-emergent surveillance operation, while in good communication with other officers, at a time when he believed the subject was still being visually tracked by other members of his team and no arrests were planning to be made or actually made that day.

For the following reasons, and based upon the evidence expected to be submitted and testimony expected to be elicited in the upcoming hearing of this matter, Defendant did not behave in an objectively reasonable manner; his actions were neither necessary nor proper. Accordingly, Defendant's Motion to Dismiss should be denied.

# SUMMARY OF FACTS[1]

The defendant in this case – Samuel Troy Landis – was engaged in a Joint Drug Enforcement Administration ("DEA") task force surveillance operation when he caused the death of bicyclist Marganne Allen.

On March 28, 2023, the defendant participated in a joint investigation involving the DEA and the Salem Police department to target fentanyl and heroin distribution in the Salem area. ECD No. 14, Ex. 3, Landis Grand Jury Testimony p. 106:1-22. Before engaging in this operation, officers conducted a briefing at 11:00 am which detailed the goals of the operation. ECD No. 14, Ex. 1, DEA Operational Plan, p. 1. The operation was supposed to begin at 12:00 p.m. The primary goal of the investigation on March 28, 2023 was to "identify the current

---

[1] The State's summary of facts is comprised of exhibits and information that have been previously filed and submitted in this case, as well as information and testimony that is expected to be elicited at the hearing in this matter. *See* ECD No. 14.

Page 2 – STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

courier's vehicle" so a tracker could be placed on the vehicle at a later date. *Id*. at p.2. This was not an operation where there was an immediate danger to life or any pursuit. ECD No. 14, Ex. 3, Grand Jury testimony of Vincent Dawson, p.38:2-7. No arrests were anticipated, and none were made during the course of this operation. ECD No. 14, Ex. 3, Grand Jury Testimony of Todd Hoagland, p. 62:2-6. DEA policy on the use of vehicles acknowledges that traffic laws may need to be broken during some enforcement actions, however the "safety of the public and the agent have higher priority than any enforcement activity. Traffic laws will not be violated to the detriment of public and personal safety." ECD No. 14, Ex. 2, DEA Policy on Government Vehicles 6124.5 D, at p.7.

The defendant's role in the investigation was to follow the courier after the controlled buy occurred. Landis Response to Written Question 14.[2] The weather at the time of this operation was overcast and it was "raining pretty heavily at the time." ECD No. 14, Ex. 3, Grand Jury Testimony of Adam Otte, p. 52:14-18. While the defendant was following the courier, the courier made a sudden turn onto Mission Street going east, and the defendant missed the turn. Landis Response to Written Question 26.[3] The defendant was trying to re-join the team in the follow, but notes he believed there was no urgency at the moment. Landis Response to Written Question 28.[4] At grand jury, the defendant testified "I don't believe there was an urgency. My understanding at the time was that there were other officers and agents who were a little bit ahead of me and a little closer to – we'll call this person the target subject. So I knew there were people ahead of me. But I also knew I had to catch up with my team members." ECD No. 14, Ex.

---

[2] To be provided at hearing.
[3] *See supra* footnote 2.
[4] *Id*.

Page 3 – STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

3, Landis Grand Jury Testimony p. 109:11-21. The defendant later says he believed someone had visual contact of the vehicle. ECD No. 14, Ex. 3, Landis Grand Jury Testimony p. 110:17-20. At the time of the crash, no one was in danger of losing sight of the suspect. ECD No. 14, Ex. 3, Grand Jury Testimony of Vincent Dawson, p. 42:7-14. The intersection where the crash occurred was "a difficult intersection" where visibility was "not great." ECD No. 14, Ex. 3, Grand Jury testimony of Todd Hoagland, p. 64:14-23.

The defendant briefly used his brakes before approaching the stop sign at the intersection of Leslie and High Street. ECD No. 14, Ex. 3, Grand Jury testimony of Martin Powell, p. 127:17 - p.128:6. The defendant proceeded into the intersection without any additional braking, running the stop sign at a speed of between 18 and 19 miles per hour. ECD No. 14, Ex. 3, Grand Jury Testimony of Martin Powell, p.127:3-23. At the moment the defendant applied brakes to slow down before entering the intersection, it would not have been possible for him to see oncoming traffic going South on High Street. ECD No. 14, Ex. 3, Grand Jury Testimony of Martin Powell, p. 127:24 – p.128:6. Marganne Allen, who had the right of way at this intersection, collided with the defendant's vehicle after he ran the stop sign at Leslie and High Street. ECD No. 14, Ex. 3, Grand Jury Testimony of Andy Phelps p. 16:2-13.

## ARGUMENT

### A. When Immunity Applies

A federal officer may be immune from prosecution for a state crime if he was performing his federal duties, and "in doing that act he did no more than what was necessary and proper for him to do." *In re Neagle*, 135 U.S. 1, 75, 10 S. Ct. 658, 672 (1890). "[T]he Supreme Court has held that the Supremacy Clause cloaks federal agents with immunity if they act reasonably in

Page 4 – STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

carrying out their responsibilities." *Idaho v. Horiuchi*, 253 F.3d 359, 362 (9th Cir. 2001), *vacated as moot*, 266 F.3d 979 (9th Cir. 2001), *citing In re Neagle*, 135 at 75.

Supremacy Clause immunity, however, is not absolute. *Clifton v. Cox*, 549 F.2d 722, 728 (9th Cir. 1977); *see also Horiuchi*, 253 at 376-77. "[T]he exercise of authority in and of itself" does not place "a federal officer beyond the reach of a state's criminal process." *Clifton*, 549 F.2d at 728. "[F]ederal agents can be prosecuted for violating state law. Had Congress found that state criminal prosecutions posed an intolerable risk for federal agents, it could have tried to broaden the scope of that immunity." *Horiuchi*, 253 at 376-77. "Every state has an interest in protecting its citizens from drivers who are reckless or intoxicated; that interest does not vanish whenever the driver happens to be a federal employee in a government car or a military truck." *State v. Ivory*, 906 F.2d 999, 1002 (4th Cir. 1990).

"The significant question of whether the conduct was necessary and proper under the circumstances must still be answered." *Clifton*, 549 F.2d at 728. "Essential to this determination, assuming the truth of the state's evidence, is whether the official employs means which he cannot honestly consider reasonable in discharging his duties or otherwise acts out of malice or with some criminal intent." *Id.*, *citing In re McShane,* 235 F. Supp. 262, 273 (N.D. Miss. 1964).

The "necessary and proper" test contains both a subjective component and an objective component. The officer must subjectively believe his actions are necessary and reasonable, and that his conduct was objectively reasonable under the existing circumstances. *Clifton*, 549 F.2d at 728. The question hinges on whether the officer's conduct was reasonably necessary for the performance of his duties. *Wyoming v. Livingston*, 443 F.3d 1211, 1227-28 (10th Cir 2006). In determining whether an action was necessary and proper, the court needs to look at the

Page 5 – STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

circumstances existing at the time as they appeared to him, and the "reasonableness and integrity of his conclusion that such action was necessary." *In re McShane*, 235 F.Supp. at 273. In *Horiuchi*, the court noted immunity from state prosecution of criminal charges has limits. "When an agent acts in an objectively unreasonable manner, those limits are exceeded." 253 F.3d at 377.

The defendant's actions were objectively unreasonable in this case. The defendant believed the subject was not in danger of being lost and all officers involved were in good radio contact. No arrests were going to be made, and ostensibly, the primary goal of this operation (to identify the vehicle the courier was driving) had already been achieved before the defendant turned his vehicle onto Leslie Street. The defendant violated DEA policy in the manner he was driving and it was in no way reasonable for him to blindly run a stop sign in an unfamiliar area while it was raining heavily.

### B. No Exigency Existed

Although the Ninth Circuit does not appear to have held exigency is a requirement for granting a federal officer immunity, the Fourth Circuit has held exigency is a requirement for immunity in cases where an on-duty traffic accident occurs. This court should adopt the Fourth Circuit's requirement.

On two occasions, the Fourth Circuit has held that, for the defense of immunity to apply, some exigency stemming from the defendant's federal duty must be present for the defense of immunity to apply. First, in *State v. Ivory*, the court held in part that the defendant was not immune to prosecution for state crimes where he was driving in a convoy as part of his federal military duties. 906 F.2d 999, 1000, 1003 (4th Cir. 1990). Subsequently, in *North Carolina v.*

Page 6 – STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

*Cisneros*, the court denied federal immunity to a soldier operating the lead truck in a convoy when he failed to stop at an intersection controlled by a stop light, killing a driver who had right of way. 947 F.2d 1135, 1137 (4th Cir. 1991). The Court in *Cisneros* noted:

> Most critically, to establish at that point a federal immunity defense–hence federal removal jurisdiction–growing out of an on-duty vehicular traffic accident, a federal officer must show that the accident resulted from an exigency or emergency related to his federal duties which dictated or constrained the way in which he was required to, or could, carry out those duties. Thus, the necessity to exceed a speed limit in order to capture a fleeing felon, or to execute a raid, or the necessity to use a known defective vehicle to complete emergency snow clearing are examples of facts supporting an immunity defense, hence federal jurisdiction, in this type situation. But facts which do not reveal any such legitimately constraining duty related emergency or exigency as the cause of state law violation do not suffice to establish a federal defense, hence a basis for removal jurisdiction.

*Id.* at 1139 (citation omitted).

Turning to the Ninth Circuit, in *California v. Dotson*, the court appeared to analyze whether an exigency was ongoing during the crash in a 2012 California case. *California v. Dotson*, No. 12cr0917 AJB, 2012 U.S. Dist. LEXIS 73250, 2012 WL 1904467, at *17 (S.D. Cal. May 24, 2012). In that case, the Court found immunity applied where the agent was "speeding in order to catch up with a suspect he was following in anticipation of assisting other agents in his arrest," with intermittent radio coverage resulting in communication difficulties. *Id.* at *2-*3, *19. The Ninth Circuit found "that the Defendant's actions constituted an exigency and/or emergency which dictated or constrained the way in which Defendant was required to, or could, carry out these duties" and ultimately concluded that "Defendant's actions were within the scope of authority and were necessary and proper." *Id.* at *19-*20.

Page 7 – STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

PAIGE E. CLARKSON
District Attorney for Marion County, Oregon
555 Court Street NE, Suite 3250
P.O. BOX 14500
SALEM, OR 97309

In contrast here, there was no exigency; the defendant believed the subject was not in danger of being lost and all officers involved were in good radio contact. No arrests were going to be made, and the primary goal of this operation (to identify the vehicle the courier was driving) had already been achieved.

## CONCLUSION

For the abovementioned reasons, and based upon the testimony and evidence expected to be elicited and submitted at the upcoming hearing in this matter, the State of Oregon respectfully requests this Court deny Defendant's Motion to Dismiss; Mr. Landis is not entitled to immunity in this case.

DATED this 13th day of September, 2024.

Respectfully submitted,

PAIGE E. CLARKSON
District Attorney for Marion County, Oregon

*s/ David R. Wilson*

DAVID R. WILSON, OSB No. 075610
JESSICA B. SPOONER, OSB No. 105919
Marion County Deputy District Attorneys
Tel (503) 588-5222
drwilson@co.marion.or.us
jspooner@co.marion.or.us

Page 8 – STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

PAIGE E. CLARKSON
District Attorney for Marion County, Oregon
555 Court Street NE, Suite 3250
P.O. BOX 14500
SALEM, OR 97309